UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

KELSEY WALLACE,

    *Plaintiff*,

v.

CHRIS WRIGHT, Secretary of Energy,[1]

    *Defendant*.

Civil Action No. 24-2906 (SLS)

Judge Sparkle L. Sooknanan

## MEMORANDUM OPINION

Kelsey Wallace is a former Foreign Affairs Specialist in the Department of Energy's Office of Nuclear Material Removal who was terminated in May 2023. She alleges that her termination was unlawful and that it was the culmination of a pattern of discriminatory conduct she suffered because of her disability. Ms. Wallace brings this suit alleging disability discrimination under the Rehabilitation Act of 1973. The Secretary of Energy now moves to partially dismiss Ms. Wallace's Complaint under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the Court grants the motion in part and denies it in part.

### BACKGROUND

**A.**     **Factual Background**

The Court draws the facts, accepted as true, from the Plaintiff's Complaint and attachments. *Wright v. Eugene & Agnes E. Meyer Found.*, 68 F.4th 612, 619 (D.C. Cir. 2023).

Ms. Wallace began her employment at the Department of Energy (DOE) in June 2021 as a Program Analyst. First Am. Compl. (Compl.) ¶ 12, ECF No. 16. In August 2022, she accepted a

---

[1] The current Secretary is substituted for his predecessor pursuant to Fed. R. Civ. P. 25(d).

new position as a Foreign Affairs Specialist. Compl. ¶ 13. In that role, she was supervised by Jessica Lillo and Tiffany Blanchard-Case. Compl. ¶¶ 27–28, 34–35.

For the first seven months of her new job, Ms. Wallace had no issues with management and performed her duties "at or in excess of the DOE's reasonable expectations." Compl. ¶ 14. In March 2023, however, she had to undergo neck surgery and the recovery "did not go as planned." Compl. ¶¶ 15–16. Shortly after the surgery, Ms. Wallace began to develop intense pain and swelling at the surgical site. Compl. ¶ 17. She let Ms. Lillo and Ms. Blanchard-Case know that she "temporarily needed to telework from home" and would keep them "apprised as to her status." Compl. ¶ 17.

Unfortunately, Ms. Wallace's condition continued to worsen and on April 11, 2023, she was diagnosed with a "septic medical abscess." Compl. ¶ 19. She promptly began the "first of many fluid removal procedures that she ultimately endured over the next few weeks." Compl. ¶ 19. While receiving this treatment, Ms. Wallace required "daily monitoring" from her treatment team and was instructed by her surgeon to not go to the office or lift anything. Compl. ¶¶ 20–21. Ms. Wallace continued to work remotely, to update her supervisors daily, and to schedule her medical appointments during her lunch hour so they "would not interfere with her work." Compl. ¶ 22.

Ms. Wallace continued to telework, at her surgeon's direction, from April 17 until April 28, 2023, during which time she underwent an additional surgical procedure to remove the "internal medical stitch that caused the abscess to form" and to implant a medical drain in her face. Compl. ¶¶ 23–26. Ms. Wallace also continued to keep her supervisors apprised of her situation. Compl. ¶ 23. As a result of her continued need to telework, Ms. Wallace informed Ms. Lillo that she would not be able to travel with her for a previously planned work trip to South Carolina during

the week of April 24 to 28. Compl. ¶¶ 27–28. In response, "Ms. Lillo began making veiled threats about how missing work trips can result in termination of employment." Compl. ¶ 28.

Ms. Wallace had another work-trip scheduled during the week of May 8 to 12, 2023. Compl. ¶ 29. Following Ms. Lillo's comments about her missing the South Carolina trip, Ms. Wallace "grew increasingly concerned" that if she missed a second work trip because of her disability she would be terminated. Compl. ¶ 29. As a result, even though her health condition was still tenuous and her surgeon was concerned about her traveling, Ms. Wallace felt she "had no other choice than to attend the . . . trip." Compl. ¶ 30–31.

On the second day of the trip, Ms. Wallace "began feeling immense swelling and pain return to the surgical site." Compl. ¶ 32. She scheduled an emergency appointment with her treatment team when she returned to the D.C. area and had "additional drainage protocol and compression of the abscess" from May 12 to 18, including having a "third medical drain implanted into her face." Compl. ¶¶ 32–33.

On May 16, 2023, while Ms. Wallace was in the midst of this treatment—and "under her surgeon's directive to remain home and continue working remotely"—Ms. Lillo and Ms. Blanchard-Case "ordered" Ms. Wallace to come into the office or "she would be immediately terminated." Compl. ¶¶ 34–36. They issued this order despite being aware of Ms. Wallace's condition and of her surgeon's directive that she work from home. Compl. ¶ 35.

Ms. Wallace complied with her supervisors' order. When she came to DOE's office the following week to meet with Ms. Lillo, she was "told she was being fired" and that she had been made to come "into the office in-person" so she could "sign termination paperwork." Compl. ¶ 37. Ms. Lillo informed Ms. Wallace that "she would[] not be permitted to leave Ms. Lillo's office until

the paperwork was signed." Comp. ¶ 38. DOE terminated Ms. Wallace on May 23, 2023. Compl. ¶ 11.

On July 6, 2023, Ms. Wallace contacted an Equal Employment Opportunity (EEO) Counselor. Compl. ¶ 7. On October 10, 2023, she filed a formal discrimination complaint with the DOE's EEO Office and with the Equal Employment Opportunity Commission (EEOC). Compl. ¶ 8. On July 16, 2024, the DOE's EEO Office issued its "Final Agency Decision . . . advis[ing] [Ms. Wallace] that she had 90 days to commence an action in federal court. Compl. ¶ 10.

### B. Procedural Background

Ms. Wallace filed this lawsuit on October 14, 2024. ECF No. 1. On June 19, 2025, she filed an Amended Complaint, alleging that the Secretary violated the Rehabilitation Act of 1973 by discriminating against her based on disability (Count I) and subjecting her to a hostile work environment (Count II). Compl. ¶¶ 40–71, ECF No. 16. On July 3, 2025, the Secretary moved to partially dismiss Ms. Wallace's lawsuit under Rule 12(b)(6). ECF No. 17. The motion is fully briefed and ripe for review. *See* Pl.'s Opp'n, ECF No. 18, Def.'s Reply, ECF No. 19.

## LEGAL STANDARD

Under Rule 12(b)(6), a court will dismiss a complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When reviewing a motion to dismiss under Rule 12(b)(6), courts "must construe the complaint in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (internal quotations omitted). But courts need not accept as true "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the complaint. *See Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

**DISCUSSION**

The Secretary does not challenge Ms. Wallace's ability to proceed with a disability discrimination claim premised on her termination. Mot. Dismiss at 1. He instead argues: (1) that she has failed to exhaust administrative remedies for many of her other claims; (2) that even if exhausted, her retaliation and failure to accommodate claims fail; and (3) that she has failed to plausibly state a claim for hostile work environment. The Court finds many but not all of the Secretary's arguments persuasive and thus grants in part and denies in part the Secretary's motion. Ms. Wallace may proceed with claims alleging discrimination and retaliation premised on her termination. The rest of her claims are dismissed.

A.  **Administrative Exhaustion**

Federal employees alleging discrimination under the Rehabilitation Act must "exhaust administrative remedies before filing suit in federal district court." *Barkley v. U.S. Marshals Serv.*, 766 F.3d 25, 33 (D.C. Cir. 2014) (citing 29 U.S.C. § 794a(a)(1)). This means that an employee "must 'initiate contact' with an EEO Counselor in her agency 'within 45 days of the date of the matter alleged to be discriminatory.'" *Steele v. Schafer*, 535 F.3d 689, 693 (D.C. Cir. 2008) (citing 29 C.F.R. § 1614.105(a)(1)). This forty-five-day clock begins to run "when an employee has a reasonable suspicion of a discriminatory action." *Nguyen v. Mabus*, 895 F. Supp. 2d 158, 171 (D.D.C. 2012) (cleaned up).

If the matter cannot be resolved informally after the employee's initial contact with the counselor, the counselor must inform the employee of the right to sue, and the employee "must file a formal complaint of discrimination with the agency." *Id.* "The agency must then investigate the matter, after which the complainant may demand an immediate final decision from the agency or a hearing before an EEOC administrative judge." *Id.* (citing 29 C.F.R. §§ 1614.106(e)(2),

1614.108(f)). After receiving a final decision from the agency, the complainant has ninety days to file a civil action in federal court. *Id.* (citing 29 C.F.R. § 1614.407).

"A discrimination lawsuit brought after an employee goes through this process must be limited to the claims that were alleged in the EEO complaint or that were 'like or reasonably related to the allegations . . . and growing out of such allegations.'" *Bozgoz v. James*, No. 19-cv-239, 2020 WL 4732085, at *7 (D.D.C. Aug. 14, 2020) (quoting *Park v. Howard University*, 71 F.3d 904, 907 (D.C. Cir. 1995)). In other words, the claims must "arise from the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Id.* at *8 (cleaned up). "A plaintiff's purported failure to exhaust administrative remedies is an affirmative defense, and defendants bear the burden of pleading and proving it." *Id.* at *6.

Here, the Secretary asserts that Ms. Wallace has not successfully exhausted "(1) the discrete disability discrimination claim premised on any threats of termination, ridicule, the requirement she attend a May 8-12, 2023, work trip, the revocation of a reasonable accommodation, or the revocation of her email access; (2) any discrete retaliation claim; (3) any retaliatory hostile work environment claim; and (4) any failure-to accommodate claim[.]" Mot. Dismiss at 9. The Court agrees as to all but the retaliation claims.

The most obvious deficiency of many of Ms. Wallace's claims is that they were not raised with an EEO Counselor within forty-five days of their occurrence. The Supreme Court has advised in the context of administrative exhaustion of employment discrimination claims that "strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 108 (2002) (quoting *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)). Accordingly, "discrete discriminatory acts are not actionable" if they were not raised in the statutorily mandated "time

period after the discrete discriminatory act occurred." *Id.* at 113. An act is a "discrete act" that might support a standalone claim of discrimination if it occurs at a "fixed time." *Coleman-Adebayo v. Leavitt*, 326 F. Supp. 2d 132, 137–38 (D.D.C. 2004) (citing *Morgan*, 536 U.S. at 114). This generally includes acts like termination, failure to promote, or denial of an accommodation request. *Id.* Importantly, this does not mean that these prior acts may never be raised in a plaintiff's lawsuit. In some instances, for example, they may be actionable as "component acts" of a "hostile work environment claim" that was timely filed. *Morgan*, 536 U.S. at 117. They might also be cited "as background evidence in support of a timely claim." *Id.* at 113. These discrete prior acts cannot, however, serve as independent bases for discrimination claims if they occurred "outside the statutory time period." *Id.* at 105.

Here, Ms. Wallace first initiated contact with the EEO Counselor on July 6, 2023. Compl. ¶ 7. This means that the only discrete acts that may serve as independent bases for Ms. Wallace's claims are acts that occurred less than forty-five days before that date—*i.e.*, after May 22, 2023. Based on Ms. Wallace's Complaint, the only discrete discriminatory act that occurred after May 22, 2023, was her termination. While Ms. Wallace may allege that discriminatory acts prior to May 22 are part of her hostile work environment claims or are background evidence for why her termination was discriminatory, she may not assert separate discrimination claims based on those acts because they were not administratively exhausted. Accordingly, the Court dismisses any disability discrimination, retaliation, or accommodation claims premised on actions that occurred before May 22, 2023. This includes threats of termination related to her work trip to South Carolina, any comments or actions that made her feel she was required to attend the May 8-12 work trip, and denial of or revocation of her medical accommodation through the May 16, 2023, directive from her supervisors that she come into the office.

The only remaining question is whether Ms. Wallace has exhausted a retaliation claim premised on her termination. The Secretary says no because she did not adequately raise such a claim in her formal EEO Complaint. Specifically, the Secretary says that Ms. Wallace "did not check the box for 'retaliation' in her formal EEO Complaint" and thus did not put the agency on notice of that claim. Mot. Dismiss at 8. The Court disagrees. As one of the cases cited by the Secretary notes, a claimant who does not check the proper box on her EEO Complaint may still properly raise the claim if she otherwise describes it on the charge form. *Carter v. Washington Post.*, No. 05-cv-1712, 2006 WL 1371677 at *4 (D.D.C. May 15, 2006). And here, the Secretary acknowledges that Ms. Wallace listed "retaliation" in the title of her EEO complaint. Reply at 5. The Court sees no legal basis for meaningfully distinguishing between "checking the box" for retaliation and listing retaliation in the title of a complaint. At this early stage, where the Plaintiff must be given the benefit of all inferences, the Court is satisfied that DOE was sufficiently on notice that Ms. Wallace was alleging retaliation. Thus, the retaliation claim based on her termination has been administratively exhausted.

**B.    Retaliation and Accommodation**

The Secretary next asserts that even if Ms. Wallace's retaliation and accommodation claims have been exhausted, they have not been plausibly alleged. *See* Mot. at 9–16. As noted previously, Ms. Wallace may not assert claims premised on discrete acts that occurred before May 22, 2023, as those claims were not administratively exhausted. This forecloses any claims related to lack of accommodation because Ms. Wallace's Complaint contains no allegations regarding conduct after May 22, 2023, that could support such claims. Ms. Wallace is not foreclosed, however, from asserting a retaliation claim premised on her termination. And the Court concludes that her Complaint contains sufficient allegations to support such a claim.

To state a retaliation claim under the Rehabilitation Act, a plaintiff must allege that: "(i) she engaged in statutorily protected activity; (ii) she suffered a materially adverse action by her employer; and (iii) a causal link connects the two." *Doak v. Johnson*, 798 F.3d 1096, 1107 (D.C. Cir. 2015) (cleaned up). At the motion to dismiss stage, "the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002); *see also Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) ("[T]o survive a motion to dismiss, all the complaint has to say is [that] the [defendant] retaliated against me because I engaged in protected activity." (cleaned up)).

Here, Ms. Wallace's allegations satisfy all three elements. First, she alleges that she made "weekly accommodation requests" during the period in which she was recovering from surgery. Compl. ¶ 50. Second, her termination was an obviously adverse employment action. And third, Ms. Wallace's allegations support a reasonable inference that her termination was connected to her protected activity. This inference is supported by temporal proximity because Ms. Wallace's termination occurred within approximately two months of her becoming disabled and requesting accommodation. *See, e.g.*, *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007) (temporal proximity can "support an inference of causation . . . where the two events are 'very close' in time" (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001))). This inference is also supported by Ms. Wallace's allegations that her supervisors did not like that she needed to telework because of her medical condition and that she was unable to participate in previously scheduled work travel. Compl. ¶ 28. While Ms. Wallace may not ultimately prevail on her retaliation claim— indeed, her allegations of retaliation are not robust—she has sufficiently alleged that she engaged in protected activity and that DOE terminated her as a result. Compl. ¶ 61. This is enough to survive dismissal. *See Rochon*, 438 F.3d at 1220.

### C. Hostile Work Environment

Finally, the Secretary seeks dismissal of Ms. Wallace's hostile work environment claim. A hostile work environment claim brought under the Rehabilitation Act[2] is analyzed under the same framework as Title VII of the Civil Rights Act. *See Sanders v. Kerry*, 180 F. Supp. 3d 35, 44 (D.D.C. 2016). To adequately plead such a claim, a plaintiff must plausibly allege that (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) she was harassed because of her protected status; (4) the harassment was severe to a degree which affected a term, condition, or privilege of her employment; and (5) the employer knew or should have known about the harassment but nonetheless failed to take steps to prevent it. *Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995, at *21 (D.D.C. Oct. 27, 2022).

"To determine whether a hostile work environment exists, the court looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch v. Kempthorne*, 550 F.3d 1191, 1201 (D.C. Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787–88 (1998)). The Supreme Court has also made clear that "conduct must be extreme to amount to a change in the terms and conditions of employment." *George v. Leavitt*, 407 F.3d 405, 416 (D.C. Cir. 2005) (quoting *Faragher*, 524 U.S. at 788). By adhering to these standards, a court "ensure[s] that Title VII does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace[.]" *Faragher*, 524 U.S. at 788 (cleaned up).

---

[2] The D.C. Circuit has not affirmatively decided whether the Rehabilitation Act provides a cause of action for a hostile work environment but has been willing to assume that it does. *See Hartzler v. Mayorkas*, No. 20-cv-3802, 2022 WL 15419995, at *21 (D.D.C. Oct. 27, 2022) (citing *Kuraner v. Mineta*, No. 00-5416, 2001 WL 936369, at *1 (D.C. Cir. July 10, 2001) (per curiam)).

Here, Ms. Wallace alleges that she was subjected to a hostile work environment based on a "continuous and escalating series of discriminatory acts." Opp'n at 8. These include that her supervisors "harass[ed] and ridicul[ed] [her] . . . because of her disability"; threatened her with termination because she was "unable to attend a work trip" due to her disability; "publicly ridicul[ed]" her by making her "come into the office" despite knowing her doctor had said she should not do so; placed her "under so much pressure and duress to attend the May work trip" that she felt she had to attend; and "unjustifiably revok[ed] [her] medical accommodation" by making her come into the office in-person to sign her termination paperwork. Compl. ¶¶ 52–53.[3]

These allegations do not support a hostile work environment claim. As an initial matter, Ms. Wallace's allegations are exceedingly vague. Her allegations about being harassed and ridiculed, for example, reveal very little about what was actually said to her, who said it, and where and when they said it. Ms. Wallace's only moderately specific allegation on that topic is that at some point after she missed the South Carolina trip, Ms. Lillo made "veiled threats about how missing work trips can result in termination of employment." Compl. ¶ 28. This allegation on its own does not support a conclusion that Ms. Wallace was subject to the frequent, severe, or pervasive harassment needed to create a hostile work environment.

Ms. Wallace's other allegations are similarly lacking. Indeed, several of the other allegations that she frames as a "series" or "pattern" of "actionable instances of unlawful misconduct" all appear to arise from what is essentially a single incident: her in-office termination. *See* Compl. ¶¶ 52–53. This includes her allegation that she was "publicly ridicule[ed]" by being made to come into the office, and her allegation that her supervisors' order on May 16, 2023, that

---

[3] Ms. Wallace's Complaint also includes an allegation about "the abrupt revocation of her email access" but says nothing about when this occurred, who ordered it, and why it was discriminatory. Compl. ¶ 53.

11

she come into the office "unjustifiably revok[ed] [her] medical accommodation." Compl. ¶ 52. Ms. Wallace cannot salvage her deficient factual allegations by piling on top of them conclusory legal allegations that the conduct to which she was subject was "severe or pervasive," that it "alter[ed] the conditions of [her] employment," or that it "cultivated a pervasively hostile and abusive work atmosphere." Compl. ¶¶ 54–57.

The inadequacy of Ms. Wallace's claim is laid bare by the slew of cases cited in the Secretary's motion involving more substantial allegations that did not survive dismissal. *See* Mot. Dismiss at 16–20; *see, e.g., Smith v. Jackson*, 539 F. Supp. 2d 116, 138 (D.D.C. 2008) (plaintiff alleged supervisor had "called [him] into his office numerous times a day, repeatedly called him on the phone, constantly sent him emails, changed his [work schedule], charged him with [being away without leave] and physically blocked his path when he sought to leave the office"); *Hartzler*, 2022 WL 15419995, at *22 (plaintiff alleged that she was "verbally ridiculed, including having her medical conditions insulted and discussed openly," placed on a performance improvement plan, "given undesirable work," and "excluded from meetings").

In response, Ms. Wallace cites two cases—*Bonnette v. Shinseki*, 907 F. Supp. 2d 54 (D.D.C. 2012)[4], and *Brooks v. Grundmann*, 748 F.3d 1273 (D.C. Cir. 2014)—for the proposition that "courts have recognized" allegations of a "systematic campaign of discrimination and retaliation . . . as sufficient to state a hostile work environment claim." Opp'n at 9. Setting aside that Ms. Wallace's allegations do not describe a "systematic campaign of discrimination," neither *Bonnette* nor *Brooks* stands for that proposition. Nor do they help Ms. Wallace's case. In both cases, the courts found that hostile work environment claims could *not* be established even though

---

[4] Ms. Wallace's Opposition cites this case as *Bonnell v. Shinseki*, which the Court assumes is a typographical error. *See* Opp'n at 9.

the plaintiffs had made allegations that were arguably more severe than Ms. Wallace. *Bonnette,* 907 F.Supp.2d at 80–82; *Brooks*, 748 F.3d at 1276–78.

At bottom, Ms. Wallace simply has not alleged conditions that are "sufficiently severe or pervasive to . . . create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). Accordingly, her hostile work environment claim must be dismissed.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part the Secretary's motion to dismiss. ECF No. 17. Ms. Wallace may proceed with claims alleging discrimination and retaliation premised on her termination. All of her other claims are dismissed.

A separate order will issue.

_____
SPARKLE L. SOOKNANAN
United States District Judge

Date:   October 31, 2025